251 P.3d 249 (2011)
Louis Alexander DIAZ and Mona Diaz, Appellants,
v.
STATE of Washington, UNIVERSITY of WASHINGTON; Neal D. Futran, DMD, M.D.; and Yakima Valley Memorial Hospital Association, a Washington nonprofit corporation, Defendants,
Medical Center Laboratory Inc., PS, a Washington professional services corporation; and Jayanthi Kini, M.D., Respondents.
No. 64363-1-I.
Court of Appeals of Washington, Division 1.
Publication Ordered April 27, 2011.
March 7, 2011.
*250 Joseph Andrew Grube, Ricci Grube Breneman PLLC, Seattle, WA, for Appellants.
Daniel W. Ferm, Mary H. Spillane, Williams Kastner & Gibbs, Seattle, WA, Jeffrey Richard Street, Hodgkinson Street LLC, Portland, OR, for Respondents.
APPELWICK, J.
¶ 1 The Diazes filed this medical malpractice action alleging misdiagnosis of cancer of the larynx resulting in the unnecessary removal Mr. Diaz's larynx. The question presented is whether RCW 7.70.080 permits the introduction of evidence of, and instruction of the jury on, a settlement between the plaintiff and a codefendant who is no longer a party. We conclude it does. We affirm.

FACTS
¶ 2 Louis Diaz and his wife sued several health care providers, alleging malpractice relating to the diagnosis of Mr. Diaz's cancer of the larynx. The Diazes named Dr. Neal Futran, the otolaryngologist and oral surgeon who performed the related surgery, and his employer, the University of Washington Medical Center (UW), in the lawsuit. The Diazes also named Dr. Jayanthi Kini, the pathologist who reviewed Mr. Diaz's biopsy specimen and diagnosed cancer, and her employer, Medical Center Laboratory, Inc., PS (MCL).[1] Prior to trial, the Diazes reached a settlement with Futran and UW for $400,000. The case proceeded against Kini and MCL. In the first trial, the evidence of settlement was not admitted. The jury deadlocked and could not render a verdict. Before the second trial, the trial court ruled that the evidence of the Diazes' settlement with Futran and UW, including the amount, was admissible under RCW 7.70.080. The Diazes' counsel informed the jury of the settlement in opening argument.
¶ 3 Mid-trial, the Diazes renewed the motion to exclude evidence of the settlement or to reserve a decision regarding the effect, if any, of the settlement on the jury verdict. Because counsel had made reference to the settlement in opening statements, the Diazes counsel also asked that the court consider a curative instruction. The trial court ruled that the evidence was admissible.
¶ 4 The trial court then gave the following instruction:
You have heard evidence that the University of Washington and Dr. Neal Futran were once parties to this litigation and later entered into a settlement with the plaintiffs, paying the plaintiffs $400,000. This evidence should not be used to either (a) assume the University of Washington or Dr. Futran acted negligently to cause damage to the plaintiffs, (b) excuse any liability you find on the part of Dr. Kini or MCL, or (c) reduce the amount of any damages you find were caused by Dr. Kini or MCL. By giving you this instruction, the court does not mean to instruct you for which party your verdict should be rendered.
The jury found in favor of Kini and her employer. The trial court denied the Diazes' motion for a new trial. The Diazes appeal both the judgment and the denial of the motion for a new trial.

DISCUSSION
¶ 5 The Diazes contend that the trial court erred in admitting evidence of the settlement between the Diazes and defendants Futran and UW. The trial court found that RCW 7.70.080 permitted admission of the settlement. This court reviews a trial court's interpretation of a statute de novo. Nevers v. Fireside, Inc., 133 Wash.2d 804, 809, 947 P.2d 721 (1997).
¶ 6 RCW 7.70.080 states:
Any party may present evidence to the trier of fact that the plaintiff has already been compensated for the injury complained of from any source except the assets of the plaintiff, the plaintiff's representative, or the plaintiff's immediate family. In the event such evidence is admitted, the plaintiff may present evidence *251 of an obligation to repay such compensation and evidence of any amount paid by the plaintiff, or his or her representative or immediate family, to secure the right to the compensation. Compensation as used in this section shall mean payment of money or other property to or on behalf of the plaintiff, rendering of services to the plaintiff free of charge to the plaintiff, or indemnification of expenses incurred by or on behalf of the plaintiff. Notwithstanding this section, evidence of compensation by a defendant health care provider may be offered only by that provider.
The Washington Legislature added RCW 7.70.080 in 1976, when it modified common law with respect to medical malpractice actions for health care. See LAWS OF 1975-76, 2nd Ex.Sess., ch. 56, § 13; RCW 7.70.010; Branom v. State, 94 Wash.App. 964, 968, 974 P.2d 335 (1999). The purpose of the legislation was to address rising health care costs resulting from the high cost of malpractice liability:
The medical malpractice issue is national in scope, and represents a wide range of factors which combine to create the overall problem. The most commonly cited examples of symptoms [sic] of the problem include: insurance carriers' [sic] dropping or restricting their coverages or refusing to cover certain providers, large increases in malpractice insurance rates which add to already rising medical care costs, providers limiting or changing their patterns of practice in order to reduce the cost of coverage; and, in some cases, providers' shutdown and strikes.
1976 FINAL LEGISLATIVE REPORT, 44th Wash. Leg., 2nd Ex.Sess., at 22.
¶ 7 RCW 7.70.080 replaced the common law collateral source rule in actions for injuries resulting from health care. Mahler v. Szucs, 135 Wash.2d 398, 412 n. 4, 957 P.2d 632, 966 P.2d 305 (1998); Adcox v. Children's Orthopedic Hosp. & Med. Ctr., 123 Wash.2d 15, 40, 864 P.2d 921 (1993). The collateral source rule is an evidentiary principle that enables an injured party to recover compensatory damages from a tortfeasor without regard to payments the injured party received from a source independent of a tortfeasor. Mazon v. Krafchick, 158 Wash.2d 440, 452, 144 P.3d 1168 (2006). The rule comes from tort principles as a means of ensuring that a fact finder will not reduce a defendant's liability because the claimant received money from other sources, such as insurance carriers. Id.; see also Mahler, 135 Wash.2d at 412 n. 4, 957 P.2d 632, 966 P.2d 305. RCW 7.70.080 restricted the collateral source rule in medical malpractice cases to permit introduction of evidence that a plaintiff has already received compensation from sources other than the defendant. See 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW & PRACTICE § 5.43, at 224-25, § 15.3, at 458-59 (3d ed. 2006); 5D KARL B. TEGLAND, WASHINGTON PRACTICE: COURTROOM HANDBOOK ON WASHINGTON EVIDENCE ER 409, at 273-74 (2010-11 ed.).
¶ 8 Our purpose in interpreting a statute is to discern and implement the intent of the legislature. Columbia Physical Therapy, Inc. v. Benton Franklin Orthopedic Assocs., 168 Wash.2d 421, 432, 228 P.3d 1260 (2010). If, when looking to the entire statute in which the provision is found and to related statutes, we determine that the meaning of the provision in question is plain, our inquiry ends. Id. at 433, 228 P.3d 1260. But, if the statute is susceptible to more than one reasonable interpretation, it is ambiguous and we may resort to statutory construction, legislative history, and relevant case law. Id.
¶ 9 Both parties, here, argue that the plain language of the statute is clear. Kini argues that, because the statute refers to "any party," only a defendant who is still a party at the time of trial can constitute a "`defendant health care provider.'" The Diazes argue the statute refers to any health care provider who is a defendant at the time the agreement to pay compensation is made.
¶ 10 The only case addressing the meaning of RCW 7.70.080 is Adcox. In that medical malpractice case, our Supreme Court held that the trial court had committed error when it determined appropriate offsets rather than allowing the jury to hear collateral *252 source evidence offered by the defendant.[2] 123 Wash.2d at 40, 864 P.2d 921. In doing so, the court discussed the history and purpose of this statute:
This statute reserves for the finder of fact  in this case, the jury  the task of examining the extent to which the plaintiff has already been compensated by third parties for the injuries incurred by the defendant and the additional task of offsetting these recoveries from the damages being assessed against the defendant.
Id. The Supreme Court nevertheless found the error harmless, but cautioned: "[W]e do not condone the trial court's failure to follow RCW 7.70.080 in its entirety, and we strongly encourage trial courts to fully follow the statute in the future." Id. at 40-41, 864 P.2d 921. Adcox establishes that a trial court must allow a party in a medical malpractice case to present collateral source evidence, including settlements.[3]
¶ 11 We hold that the statute is unambiguous. The plain meaning of the phrase "defendant health care provider," in the context of the greater statutory provision, contemplates only those defendants who participate in trial. The provision limits its application to "any party." RCW 7.70.080. Former health care provider defendants who have settled with the plaintiff and paid damages have contributed to compensation of the plaintiff and are no longer defendants in the surviving action. Any remaining party may present evidence of that compensation.
¶ 12 The Diazes also argue that the settlement is not collateral source evidence as contemplated by RCW 7.70.080. The Diazes contend that a former codefendant is not a source independent and collateral to the wrongdoer because the codefendant also contributed to the injury. But, payments need only to have been received by the injured party from a source independent from the tortfeasor. Lange v. Raef, 34 Wash.App. 701, 704, 664 P.2d 1274 (1983). The Diazes cite no authority requiring the third party source to be fault-free. The language of RCW 7.70.080 is broad and applies to compensation "from any source" except from the plaintiff and the plaintiff's family. This compensation would include settlements from other tortfeasors.
¶ 13 The Diazes next contend that ER 408 prevents the admission of the settlement. Generally, if a statute appears to conflict with a court rule, we will first attempt to harmonize them and give effect to both, but if they cannot be harmonized, the court rule will prevail in procedural matters and the statute will prevail in substantive matters. Putman v. Wenatchee Valley Med. Ctr., 166 Wash.2d 974, 980, 216 P.3d 374 (2009). This court reviews the trial court's interpretation of evidentiary rules de novo. State v. DeVincentis, 150 Wash.2d 11, 17, 74 P.3d 119 (2003).
¶ 14 ER 408 provides that evidence of settlement "is not admissible to prove liability for or invalidity of the claim or its amount." It further states, however, that "This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." ER 408. Kini argues that the settlement evidence here was not admitted for any purpose proscribed by ER 408. Instead, she contends that the purpose of the admission of the evidence, as instructed by RCW 7.70.080, is to allow the jury to reduce the award to prevent overcompensation *253 of medical malpractice plaintiffs.[4] We agree and hold that ER 408 does not prohibit the admission of settlement evidence under RCW 7.70.080.
¶ 15 Northington v. Sivo is not to the contrary. The reason for admission under ER 408 in that case, witness bias, is not at issue here. 102 Wash.App. 545, 548, 8 P.3d 1067 (2000). Although Northington recognizes that evidence of settlement is "potentially corrosive," id. at 550, 8 P.3d 1067, it does not prevent the admission of settlement evidence for the purposes prescribed by RCW 7.70.080.
¶ 16 Additional case law cited by the Diazes provides no further guidance in interpreting the statute or ER 408. Grigsby v. City of Seattle, 12 Wash.App. 453, 529 P.2d 1167 (1975) was not a medical malpractice case and was decided before both RCW 7.70.080 was enacted and ER 408 was adopted.[5]Byerly v. Madsen, 41 Wash.App. 495, 704 P.2d 1236 (1985), and Vasquez v. Markin, 46 Wash.App. 480, 731 P.2d 510 (1986), both involved medical malpractice claims but neither invoked nor referenced RCW 7.70.080. Those cases applied the general rule regarding inadmissibility of evidence of a settlement without explanation. Byerly, 41 Wash.App. at 501, 704 P.2d 1236; Vasquez, 46 Wash.App. at 484, 731 P.2d 510. Also, both cases involved inadvertently informing the jury of the settlement, not an evidentiary ruling by the trial court. Byerly, 41 Wash.App. at 498, 704 P.2d 1236; Vasquez, 46 Wash.App. at 484, 731 P.2d 510. Neither are helpful or controlling here.
¶ 17 The Diazes argue that permitting the introduction of evidence of settlements with defendants will have a chilling effect on out-of-court settlements of healthcare disputes. The Diazes theorize that no health care provider will want to be the first to settle for fear of paying a higher proportion of damages. This is a consideration to be weighed by the legislature.
¶ 18 Finding no error, we need not reach the Diazes' arguments regarding prejudice. We affirm the judgment on the jury verdict and order denying the Diazes' motion for new trial.
WE CONCUR: LEACH, A.C.J., and SCHINDLER, J.
NOTES
[1] An additional defendant, Yakima Valley Memorial Hospital Association, was voluntarily dismissed.
[2] We note that neither this case nor Adcox involved apportionment of liability under RCW 7.70.060. The rule in RCW 7.70.080 might play out differently under a case involving apportionment.
[3] The Diazes contend that Adcox related only to other types of collateral sources, not settlements. They extrapolate that settlement proceeds are not the type of collateral sources contemplated by RCW 7.70.080. They rely on the court's footnote in Adcox where it clarified that "certain collateral source evidence being proffered by the Hospital" included certain public benefits and services provided by charitable organizations, without mentioning the settlement proceeds. 123 Wash.2d at 40, 864 P.2d 921. But, a close reading of the opinion suggests that the main purpose of the offset procedure was to account for the previous settlements. Id. at 22, 864 P.2d 921. The footnote cited by the Diazes merely identifies other potential collateral sources the hospital offered to prove. Id. at 40 n. 11, 864 P.2d 921.
[4] Kini additionally argues that the trial court actually erred in instructing the jury that the settlement evidence should not be used "to reduce the amount of damages it found Dr. Kini and MCL had caused." Kini contends that the purpose of RCW 7.70.080 is to reduce the award of damages to account for compensatory payments the plaintiff has already received from collateral sources.
[5] ER 408 was adopted in 1979. 5A KARL B. TEGLAND, WASHINGTON PRACTICE; EVIDENCE § 408.1, at 59-60 (5th ed. 2007).