IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

STATE OF ARIZONA,
*Appellee,*

*v.*

DUSTIN GILL,
*Appellant.*

No. CR-16-0286-PR
Filed April 13, 2017

Appeal from the Superior Court in Maricopa County
The Honorable Teresa A. Sanders, Judge
No. CR2013-449134
**AFFIRMED**

Opinion of the Court of Appeals, Division One
240 Ariz. 229, 377 P.3d 1024 (App. 2016)
**VACATED**

COUNSEL:

Mark Brnovich, Arizona Attorney General, Dominic Draye, Solicitor General, Joseph T. Maziarz, Chief Counsel, Criminal Appeals Section, Jana Zinman (argued), Assistant Attorney General, Phoenix, Attorneys for State of Arizona

Marty Lieberman, Legal Defender, Maricopa County Office of the Legal Defender, Cynthia Dawn Beck (argued), Deputy Legal Defender, Phoenix, Attorneys for Dustin Gill

Randy McDonald, Osborn Maledon PA, Phoenix, and Mikel Steinfeld, Maricopa County Public Defender's Office, Phoenix, Attorneys for Amicus Curiae Arizona Attorneys for Criminal Justice

CHIEF JUSTICE BALES authored the opinion of the Court, in which VICE CHIEF JUSTICE PELANDER and JUSTICES BRUTINEL, TIMMER, BOLICK, GOULD, and BERCH (RETIRED)* joined.

———————

CHIEF JUSTICE BALES, opinion of the Court:

¶1 Arizona Rule of Evidence 410(a)(4) requires a court to exclude statements made by a defendant during plea discussions with a prosecutor if the discussions do not result in a guilty plea. This case concerns whether statements made in furtherance of a deferred prosecution agreement are protected by Rule 410(a)(4). We hold that this evidentiary rule does not apply to discussions about deferred prosecution and that a knowing waiver of its provisions does not require specifically referencing the rule.

**I.**

¶2 In 2013, a private security guard found Dustin Gill in a restroom stall with several grams of marijuana. The State charged Gill with possession or use of marijuana, a class 6 felony. In June 2014, Gill rejected a plea agreement during a comprehensive pretrial conference. In July, the State reduced Gill's charge to a class 1 misdemeanor. At a September 3 settlement conference, Gill agreed to participate in a drug treatment program through the Treatment Assessment Screening Center ("TASC") in return for the State deferring the prosecution.

¶3 Immediately after accepting the deferred prosecution agreement, Gill and his attorney met with a TASC representative to register for the diversion program. During the meeting, Gill completed a form titled, "Maricopa County Attorney / TASC Drug Diversion Program Statement of Facts." On the form, Gill initialed that he understood his *Miranda* rights and avowed that "I fully understand that what I have written here may be used against me in a court of law should I fail to satisfactorily complete the TASC program." When required to describe the facts of the offense on the form, Gill wrote the following admission: "The marijuana was found in the bathroom on the ground in my possession."

———————

* Justice John R. Lopez IV has recused himself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable Rebecca White Berch, Justice of the Arizona Supreme Court (Retired), was designated to sit in this matter.

**¶4**		In December 2014, the State resumed the prosecution because Gill had failed to attend TASC seminars and had tested positive for alcohol and marijuana while in the TASC program. Gill subsequently moved to suppress the statements he gave to TASC on September 3, arguing in part that they were made during plea discussions and consequently protected by Rule 410. The trial court denied Gill's motion.

**¶5**		After a bench trial, the trial court found Gill guilty, suspended his sentence, and placed him on one year of unsupervised probation. Gill appealed. Rejecting Gill's arguments that his statements to TASC were inadmissible under Rule 410(a)(4), the court of appeals held that the statements were not made to a prosecutor during plea discussions and Gill had, in any event, waived the rule's protections. *State v. Gill*, 240 Ariz. 229, 230–31 ¶¶ 7–9, 377 P.3d 1024, 1025–26 (App. 2016).

**¶6**		We granted review to address whether Rule 410(a)(4) applies to deferred prosecution agreements, a legal issue of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

**¶7**		We review a trial court's admission of evidence for an abuse of discretion, *State v. Tucker*, 215 Ariz. 298, 313 ¶ 46, 160 P.3d 177, 192 (2007), and we review de novo the interpretation of the Arizona Rules of Evidence. *State v. Romero*, 239 Ariz. 6, 9 ¶ 11, 365 P.3d 358, 361 (2016).

**¶8**		Rule 410(a)(4) provides that "a statement made during plea discussions with an attorney for the prosecuting authority" is not admissible against the defendant who participated in the plea discussions "if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea." *See also* Ariz. R. Crim. P. 17.4(f) ("The admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Arizona Rule of Evidence 410."). Gill argues that his statements to TASC are inadmissible because they were made in furtherance of plea discussions, the TASC representative acted as the prosecutor's agent, and Gill did not waive Rule 410's protections.

## A.

¶9        Gill first contends that his statements to TASC are protected by Rule 410(a)(4) because they were made in furtherance of a plea discussion.  In rejecting this argument, the court of appeals held that Rule 410(a)(4) did not apply because discussions about deferred prosecution are not plea discussions and Gill made his statements to TASC "*after* he *rejected* a plea offer." *Gill*, 240 Ariz. at 230 ¶ 7, 377 P.3d at 1025.  Whether statements are protected by Rule 410 first depends on whether plea discussions, in fact, occurred.  We look to the record to answer this question.

¶10        On September 3, Gill attended a settlement conference with his father, his attorney, a Maricopa County prosecutor, and a court commissioner.  The commissioner noted that the settlement conference concerned whether Gill would proceed to trial or "participate in [TASC] diversion."  No other option was mentioned.  As the commissioner described the benefits of TASC and the risks of trial, Gill's father interjected that his son would have to "plead guilty" in order to participate in TASC.  Immediately, the commissioner and prosecutor both corrected Gill's father, emphasizing that Gill would not be pleading guilty but agreeing to "deferred prosecution."  After the commissioner clarified the TASC program as "diversion in lieu of prosecution," Gill's father asked again whether his son would have to plead guilty.  This time, both the commissioner and Gill's counsel emphasized that Gill would not have to do so in order to enter TASC.  The commissioner then concluded the conference by giving Gill time to speak with his father about either proceeding to trial or participating in TASC.  Later that day, Gill completed his TASC registration paperwork, including the Statement of Facts form in which he admitted to possessing marijuana.  The State then suspended Gill's prosecution while he participated in TASC.

¶11        The record reflects that the September 3 settlement conference concerned only the alternatives of a trial or a deferred prosecution agreement, and did not involve a plea offer or agreement.  Neither the September 3 transcript nor the minute entry states that Gill was offered or rejected a plea agreement.  Indeed, the fact that the court, prosecutor, and Gill's own counsel twice explained that Gill would not have to plead guilty in order to participate in TASC underscored that the September 3 settlement conference did not involve a plea agreement.

**¶12**        Moreover, as the court of appeals correctly noted, discussions about deferred prosecution are categorically different from plea discussions. A plea discussion entails the prosecutor and defendant negotiating whether the defendant will plead guilty or no contest to a criminal offense in exchange for some concession by the prosecutor on any aspect of the disposition of the case. *See* Ariz. R. Evid. 410(a)(1)–(2) (noting discussions about "a guilty plea" or "no contest plea"); *Espinoza v. Martin*, 182 Ariz. 145, 147, 894 P.2d 688, 690 (1995) (defining plea negotiations on "any aspect of the disposition of the case" pursuant to Arizona Rule of Evidence 17.4(a) to mean that "'the State and the defendant may bargain both as to the plea of guilty and as to the sentence to be imposed.'") (quoting *State v. Superior Court*, 125 Ariz. 575, 577, 611 P.2d 928, 930 (1980)); *see also United States v. Levy*, 578 F.2d 896, 901 (2d Cir. 1978) ("Plea bargaining implies an offer to plead guilty upon condition. The offer by the defendant must, in some way, express the hope that a concession to reduce the punishment will come to pass.").

**¶13**        A deferred prosecution discussion, on the other hand, involves a defendant and prosecutor negotiating whether the defendant will participate in "a special supervision program" in which the state "divert[s] or defer[s], before a guilty plea or a trial, the prosecution of a person who is accused of committing a crime[.]" A.R.S. § 11-361. A defendant participates in this supervision program before "a guilty plea or a trial," and so it is a type of pretrial diversion. *Id.* If the defendant satisfactorily completes the pretrial supervision program, the court dismisses the charges. Ariz. R. Crim. P. 38.3(b). A deferred prosecution agreement can result in a dismissal of all charges, whereas a guilty plea will not because the defendant formally admits committing a criminal offense. *See DeNaples v. Office of Comptroller of Currency*, 706 F.3d 481, 489 (D.C. Cir. 2013) (noting that "[a] plea bargain, for instance, would not be a pretrial diversion, no matter its similarity to pretrial diversion for other purposes"). Thus, discussions about deferred prosecutions differ from plea discussions and therefore are not governed by Rule 410 or Arizona Rule of Criminal Procedure 17.4(f).

**¶14**        Contrary to Gill's contention, the September 3 settlement conference did not begin as a plea discussion and then morph into a discussion about deferred prosecution. Although Rule 410 conceivably could apply if plea negotiations also involve discussions about deferred

prosecution, no such circumstances existed here. Because no plea discussion occurred on September 3, Rule 410 does not apply. We add, however, that courts should not limit Rule 410 more narrowly than the rule's text. Just because a defendant makes statements *after* rejecting a plea offer does not necessarily mean that those subsequent statements were not made *during* plea discussions. The category of statements made "during plea discussions" is larger than merely statements made "before rejecting a plea offer," because plea discussions may involve a series of offers, rejections, and counter-offers before they are successfully concluded or terminated. We therefore disagree with the court of appeals' suggestion that Rule 410 does not apply merely because Gill made his statements *after* rejecting a plea offer.

**B.**

¶15 Because the issue is recurring, we also address Gill's argument that, although the TASC representative was not an attorney, Rule 410 should nevertheless apply because the representative was the prosecutor's agent. The court of appeals rejected this argument because Rule 410 only protects statements made to "an attorney for the prosecuting authority" and the TASC representative was not an attorney. *Gill*, 240 Ariz. at 230 ¶ 8, 377 P.3d at 1025.

¶16 Arizona courts have implicitly recognized that Rule 410 extends to a prosecutor's agents. *See State v. Campoy*, 220 Ariz. 539, 543 ¶ 6, 548 ¶ 25, 207 P.3d 792, 796, 801 (App. 2009) (holding that Rule 410 protected statements made by defendant to two police detectives pursuant to a free talk agreement with no prosecutor present). Some federal courts and state supreme courts have expressly reached the same conclusion. *See, e.g.*, *United States v. McCauley*, 715 F.3d 1119, 1126 (8th Cir. 2013) (holding that Rule 410's protection extends to agents with express or implied authority to negotiate on behalf of prosecutor); *Clutter v. Commonwealth*, 364 S.W.3d 135, 138 (Ky. 2012). We agree with those decisions and therefore reject the State's contention that Rule 410 only applies to attorneys for the prosecuting authority and not to agents authorized by prosecutors to negotiate pleas.

¶17 Although Rule 410 extends to the prosecutor's agents, the TASC representative here was not an agent for purposes of negotiating a plea. Whether a private party acts as a state agent depends on 1) the government's knowledge and acquiescence and 2) the intent of the private party. *See State v. Martinez*, 221 Ariz. 383, 391–92 ¶ 31, 212 P.3d 75, 83–84

6

(App. 2009). Gill maintains that the TASC representative was a state agent because the name of the county attorney's office appears on the Statement of Facts form and TASC requires an admission of guilt on that form pursuant to the county attorney's mandate.

¶18 However, these facts do not make the TASC representative the prosecutor's agent for purposes of negotiating a plea. As previously noted, Gill did not negotiate a plea during the September 3 settlement conference. Although the prosecutor told Gill at the conference that he had to make an admission to TASC in order to participate in the diversion program, the TASC representative obtained Gill's admission on the Statement of Facts form because the prosecution required it as a condition for the deferred prosecution. At most, the TASC representative acted as the prosecutor's agent for purposes of effecting the deferred prosecution agreement. Because the TASC representative was not the prosecutor's agent for purposes of negotiating a plea, Rule 410 does not apply.

## C.

¶19 Even if Gill's statements had been subject to Rule 410(a)(4), he waived the Rule's protections. Gill, however, argues that his waiver was ineffective because it was not knowingly made. We address this issue because it too is recurring and offers an alternative ground for our decision. (He has not disputed, and we do not address, the voluntariness of his waiver or whether it allowed the government to use his statements in its case-in-chief.)

¶20 "In interpreting Arizona's evidentiary rules, we look to federal law when our rule is identical to the corresponding federal rule[.]" *Hernandez v. State*, 203 Ariz. 196, 198 ¶ 10, 52 P.3d 765, 767 (2002). Arizona's Rule 410(a)(4) mirrors its federal counterpart. *See* Fed. R. Evid. 410(a)(4). In interpreting Federal Rule 410, the United States Supreme Court has held that a Rule 410 waiver is enforceable "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily." *United States v. Mezzanatto*, 513 U.S. 196, 210 (1995). Thus, a waiver of Rule 410 must be knowing and voluntary.

¶21 On appeal, Gill contends that his waiver was unknowing because his waiver agreement did not specifically refer to Rule 410. However, a knowing waiver of Rule 410 only requires a defendant to have

"a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *See In re Andre M.*, 207 Ariz. 482, 484 ¶ 7, 88 P.3d 552, 554 (2004) (quoting *Moran v. Burbine*, 475 U.S. 421 (1986)). A waiver agreement need not specifically reference the evidentiary rule being waived. *See Mezzanatto*, 513 U.S. at 197.

¶22 Here, Gill recognized that he was waiving any right not to have his statements to TASC used against him at trial. During the September 3 settlement conference, the prosecutor told Gill that "if you were to fail TASC . . . that TASC paperwork could be used against you at trial." The commissioner also made clear that Gill could opt for trial instead of making an admission to TASC. When Gill completed the Statement of Facts form in the presence of his attorney, he initialed the notations that he made "this statement without coercion and of [his] own free will" and that he "fully underst[ood] that what [he] ha[d] written here may be used against [him] in a court of law should [he] fail to satisfactorily complete the TASC program." Both he and his attorney signed the form. These facts indicate that in choosing to make statements to TASC, Gill recognized that the statements could be used against him if he failed to complete the program. Thus, Gill knowingly gave up his right to object to their admissibility, which would include objections based on Rule 410.

**III.**

¶23 For the foregoing reasons, we vacate the opinion of the court of appeals and affirm Gill's conviction and the penalty imposed by the trial court.

8